Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE FAJARDO<br><br>**Apelado**<br><br>V.<br><br>IGLESIA MISIÓN CIUDAD PARA CRISTO, INC.<br><br>**Apelante** | TA2025AP00477 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo<br><br>Civil. Núm. FA2025CV00616<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente) |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 11 de diciembre de 2025.

El 24 de octubre de 2025, la Iglesia Misión Ciudad para Cristo (Iglesia o la apelante) compareció ante nos mediante una *Apelación* y solicitó la revisión de una *Sentencia* que se emitió y notificó el 28 de agosto de 2025 por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI). Mediante el aludido dictamen, el TPI resolvió lo siguiente: (1) declaró Ha Lugar la *Demanda de Reivindicación y Solicitud de Interdicto Preliminar y Permanente* que presentó el Gobierno Municipal Autónomo de Fajardo (GMAF o el apelado) el 18 de junio de 2025; (2) ordenó a la Iglesia remover la verja y portón construida en el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real; y, por último (3) le impuso a la apelante el pago de $1,000.00 por concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen apelado, sin embargo, por fundamentos distintos.

I.

El 18 de junio de 2025, el GMAF presentó una *Demanda de Reivindicación y Solicitud de Interdicto Preliminar y Permanente* contra la Iglesia. Alegó que, en el año 1982 la Administración de Reglamentos y Permisos (ARPE) expidió las Resoluciones de los Casos 79-24-A-039 CPF y 79-24-A-1, mediante las cuales se reconoció que el GMAF aceptó la entrega de todas las calles de la Urbanización Valle Puerto Real y se determinó que dichas calles eran de carácter público.[1] Además, expuso que, el 15 de marzo de 2005, la Iglesia adquirió la finca núm. 12,684 ubicada en el Municipio de Fajardo, la cual colindaba con la Urbanización Valle Puerto Real, una parcela y la extensión de la calle dos (2) de la referida urbanización. Aseguró que, conforme al Código Municipal de Puerto Rico de 2020 y al Código Civil de Puerto Rico de 2020, era dueño en pleno dominio de la Calle 4 de la Urbanización Valle Puerto Real.

Por otro lado, adujo que, aproximadamente en agosto de 2024, la apelante construyó ilegalmente una verja y un portón sobre el área de viraje de la Calle 4, sin solicitar permiso de construcción al Municipio. Sostuvo que esa construcción impedía el libre e irrestricto uso público de la calle por residentes y visitantes, bloqueaba el acceso a las áreas recreativas de la comunidad y afectaba servicios como el correo postal y el recogido de basura. Asimismo, expresó que la estructura fue edificada sobre aceras y cunetas que eran bienes de uso público cuya administración y mantenimiento le correspondía al GMAF. También expuso que los

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

residentes de la Calle 4 se reunieron en dos ocasiones, en agosto y diciembre de 2024, con la Directora de la Oficina de Planificación del GMAF para atender los problemas causados por la construcción, pero no se logró ninguna solución.

En vista de lo anterior, argumentó que la actuación de la Iglesia violaba las obligaciones constitucionales que disponían que la propiedad pública debía destinarse al uso público, así como las normas del Código Civil de 2020, el Código Municipal de 2020 y la jurisprudencia del Tribunal Supremo de Puerto Rico sobre bienes de dominio público, los cuales eran inalienables, inembargables e imprescriptibles. Alegó que la verja y el portón impedían el uso público de la Calle 4 y vulneraba los derechos constitucionales de los residentes y visitantes.

Por ello, solicitó al Tribunal la expedición de un interdicto preliminar que ordenara a la apelante la remoción inmediata, y a su costo, de la verja y los portones construidos en la Calle 4, incluyendo las estructuras ubicadas sobre las aceras y cunetas. Una vez celebrado el proceso correspondiente, solicitó además un interdicto permanente que paralizara de forma definitiva cualquier otra obra que limitara el uso público de la calle, así como la imposición del pago de honorarios de abogados y gastos del pleito a la Iglesia. Finalmente, solicitó que se declarara Ha Lugar la Demanda y se ordenara a IMCC eliminar todas las estructuras ilegalmente edificadas y devolver el predio a su estado original en un término no mayor de veinte (20) días.

En respuesta, el 21 de julio de 2025, la Iglesia presentó su *Contestación a Demanda*.[2] Allí admitió varias alegaciones y negó varias otras por falta de información o creencia, ya que, a su entender, el GMAF no proveyó los documentos necesarios para

---

[2] *Véase*, Entrada Núm. 41, SUMAC TPI.

evaluar dichas alegaciones. Particularmente, sostuvo que el apelado no demostró ser titular de la propiedad que reclamó como pública ni ha presentado evidencia de expropiación o transferencia alguna sobre el terreno cercado.

Afirmó que la verja y el portón fueron instalados dentro de los linderos de su propiedad privada y no en la Calle 4 de la Urbanización Valle Puerto Real. Además, sostuvo que no se había afectado acceso alguno a áreas recreativas, pues estas tenían su propia entrada directa a la carretera colindante, y añadió que los remanentes de acera y cuneta dentro de su propiedad fueron construidos ilegalmente por el Municipio en terrenos ajenos.

Por otro lado, argumentó que siempre había estado dispuesta al diálogo en las reuniones donde había participado, pero que mantenía su posición de que el terreno cercado era suyo y no de uso público. Señaló que el GMAF no había presentado documentación que delimitara el terreno como propiedad pública o municipal. Asimismo, expresó que no podía confirmar alegaciones sobre reuniones en las que no había participado.

Finalmente, presentó varias defensas afirmativas. Alegó que la Demanda no exponía hechos suficientes para justificar un remedio y que no existía daño alguno porque la estructura fue construida dentro de sus propios linderos. Indicó que el apelado no había demostrado probabilidad de prevalecer, que la Demanda era difamatoria, frívola y temeraria, y que no había interés público comprometido ya que no se había obstruido carretera, servicio ni área recreativa. Añadió que el apelado actuó sin buena fe al reclamar un terreno que no le pertenecía y que cualquier daño alegado resultaba de actos negligentes del propio municipio al construir en propiedad ajena. Finalmente, señaló que la acción legal respondía a una vendetta de vecinos colindantes vinculada a un caso previo de reivindicación de predios usurpados.

Así las cosas, el 11 de agosto de 2025, a solicitud del GMAF, el TPI llevó a cabo una inspección ocular con el fin de observar y evaluar las alegaciones relacionadas con el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real y la verja y portón construidos por la Iglesia.[3] Posteriormente, el 19 de agosto de 2025, se celebró el juicio en su fondo.[4] De la *Minuta* de la vista surge que el GMAF presentó su prueba mediante el testimonio del ingeniero Robles Ramos y de los vecinos Quiñones Estrada y Quiñones Rodríguez. Durante su presentación, se admitieron varios documentos: la Resolución de ARPE del 19 de septiembre de 1978 (Exhibit 1), la Resolución de ARPE del 2 de abril de 1982 (Exhibit 2) y la Resolución de 9 de julio de 1982 (Exhibit 3). El Lcdo. Guzmán Guzmán contrainterrogó a los testigos de la parte apelada. En cuanto al testimonio del Sr. Javier Ramos García, las partes estipularon su contenido debido a que había sido escuchado durante la inspección ocular, por lo que fue excusado.

Por su parte, la Iglesia presentó su caso a través del testimonio de la pastora Castro Granados. Se admitieron tres documentos: una fotografía (Exhibit 1), una certificación de propiedad inmueble (Exhibit 2) y un mapa catastro digital de la Iglesia en dos hojas (Exhibit 3). Durante el contrainterrogatorio, el Lcdo. Díaz Ramírez presentó copia de una moción del caso NSCI200600543 y solicitó que se tomara conocimiento judicial de sus anejos. La defensa objetó la admisión de ese material, y el magistrado indicó que evaluaría su valor probatorio en su momento.

Concluido el desfile de prueba, el Lcdo. Díaz Ramírez argumentó que la calle en controversia había sido usada desde aproximadamente el año1970 como zona de viraje y que el Municipio mantenía el área como dueño. Afirmó que la Iglesia construyó la

---

[3] *Véase*, Entrada Núm. 51, SUMAC TPI.
[4] *Véase*, Entrada Núm. 60, SUMAC TPI.

verja en el año 2024, lo que obligó al Municipio a presentar la demanda, e invocó disposiciones del Código Municipal, las reglas de usucapión y la Regla 6.77 de Procedimiento Civil. Solicitó la remoción total de la verja y la devolución del área a su uso público original, alegando daños a la comunidad. El Lcdo. Guzmán Guzmán, por su parte, sostuvo que la Constitución y las leyes de Puerto Rico protegen los derechos de propiedad de su representada, citó disposiciones sobre derechos constitucionales y sobre usucapión, y argumentó que el Municipio no podía adquirir por prescripción un predio del que no era titular. Señaló que, si el Municipio reclamaba el terreno, debía recurrir a expropiación forzosa. No obstante, expresó que la Iglesia estaba dispuesta a llegar a un acuerdo y colaborar con la comunidad, pero debía proteger su propiedad.

El 28 de agosto de 2025, el TPI dictó una *Sentencia* que se notificó el 29 de agosto de 2025.[5] En primer lugar, formuló las siguientes determinaciones de hechos:

1. El 19 de septiembre de 1978, la Administración de Reglamentos y Permisos (en adelante, "ARPE") expidió la Resolución del Número de Caso 74-5-1319-SPF en la que se determina que todas las calles de la Urbanización Valle Puerto Real son de carácter público.

2. El 2 de abril de 1982, la ARPE expidió la Resolución del Número de Caso 79-24-A-039 CPF, que establece que el GMAF aceptó la entrega de todas las calles de la Urbanización Extensión Valle Puerto Real mediante carta del 29 de marzo de 1982 y también concluye el carácter público de todas las calles de dicho proyecto residencial.

3. El 9 de julio de 1982, la ARPE expidió la Resolución del Número de Caso 79-24-A-039 CPF, que establece que el GMAF aceptó la entrega de todas las calles de la Urbanización Extensión Valle Puerto Real mediante carta del 29 de marzo de 1982 y también permita concluir el carácter público de todas las calles de dicho proyecto residencial.

---

[5] *Véase*, Entrada Núm. 67, SUMAC TPI.

4. El área de viraje de la Calle 4 de la Urbanización Puerto Real está asfaltada, tiene aceras y cunetas construidas en cemento para uso público de la comunidad.

5. Desde la entrega de las calles de las Urbanizaciones Valle Puerto Real y la Extensión Valle Puerto Real en 1978 y 1982, el GMAF le ha dado mantenimiento en concepto de dueño al asfalto, las aceras y las cunetas existentes en el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real.

6. El 15 de marzo de 2005, la Iglesia Misión Ciudad para Cristo Inc., adquirió de manos de la Corporación Nuevo Centro de Fajardo Inc., la finca 12,684 mediante la Escritura de Compraventa e Hipoteca número tres (3) otorgada ante el Notario Juan José Forastieri.

7. La Iglesia Misión Ciudad para Cristo Inc., no hizo ningún acto de dominio sobre el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real desde que adquirió su propiedad en el 2005 excepto la construcción de la verja y portón en Agosto de 2024.

8. Los vecinos de la Calle 4 de la Urbanización Valle Puerto Real han sido directamente afectados por la construcción de la verja y portón y contactaron al GMAF como dueño de todas las calles de dicha urbanización para que los protegiera de las actuaciones de la demandada.

9. La demandada ha privado a los vecinos de la Calle 4 de la Urbanización Valle Puerto Real del libre uso del área de viraje y simultáneamente ha ocasionado dificultad innecesaria para entrar y salir con sus vehículos de motor a sus residencias.

10. La instalación de la verja y portón ha resultado en la obstaculización del tránsito en la Calle 4 Urbanización Valle Puerto Rea, afectando el recogido de desperdicios sólidos, el correo postal y los servicios de emergencias.

11. Antes que la Presidenta de la Iglesia Misión Ciudad Para Cristo Inc., Sra. Janet Castro Granado, comprara la propiedad donde ubica la iglesia, ya la Sra. Castro Granado era residente, de la C-3 Calle 2, de la misma Urbanización y existía el viraje de la Calle 4 y conocía el uso público que le daba la comunidad.

12. Desde antes de adquirir la corporación (Iglesia) el terreno que le vendió Corporación Nuevo Centro de Fajardo Inc., el 15 de marzo de 2005, existía el área de viraje de la Calle 4 y era utilizada como tal por los residentes y visitantes del área.

13. En el caso Iglesia Misión Ciudad para Cristo Inc. v. Manuel Monge Silva, et al, Civil Número (NSCI2006-00543), sobre Reivindicación e Injunction, la Sra. Janet Castro Granado, reivindicó terrenos del Sr. Manuel Monge Silva y la Sra. María Quiñones Estrada, pero nunca intentó reivindicar el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real.

Luego, expresó que la evidencia documental y testifical presentada demostró que las calles de las Urbanizaciones Valle Puerto Real y Extensión Valle Puerto Real fueron entregadas al Gobierno Municipal Autónomo de Fajardo (GMAF) entre los años 1978 y 1982. Indicó que, desde entonces, dichas calles habían sido utilizadas por los residentes como vías públicas. Determinó que, el GMAF había brindado mantenimiento continuo al asfalto, aceras y cunetas durante los últimos cuarenta y tres (43) años, actuando como dueño de manera pública, pacífica e ininterrumpida, lo cual cumplía los requisitos de la prescripción adquisitiva según el derecho aplicable.

En atención a lo anterior, sostuvo que el GMAF podía adquirir la propiedad por el transcurso del tiempo conforme al Código Civil de 1930 y mediante los medios legales autorizados por el Código Municipal de 2020. Puntualizó que, en agosto de 2024, la Iglesia construyó una verja y un portón en la zona de viraje de la Calle 4 de la Urbanización Valle Puerto Real. Afirmó que la prueba testifical estableció que esta construcción había causado y continuaba causando un daño irreparable a los residentes y visitantes al obstaculizar el tránsito y afectar servicios esenciales como el recogido de basura, el correo y servicios de emergencia.

Indicó que, el 11 de agosto de 2025, realizó una Inspección Ocular conforme a la Regla 1102 de Evidencia y constató que el área de viraje poseía todas las características de una carretera municipal destinada al uso público, incluyendo asfalto, aceras y cunetas mantenidas por el GMAF durante cuarenta y tres (43) años. Determinó que, por su parte, la Iglesia adquirió la finca 12,684 el 15 de marzo de 2005, pero desde esa adquisición no realizó actos de dominio sobre el área de viraje hasta la construcción de la verja y el portón en agosto de 2024.

Por los motivos antes expuestos, resolvió lo siguiente: (1) declaró Ha Lugar la *Demanda de Reivindicación y Solicitud de Interdicto Preliminar y Permanente* que presentó el Gobierno Municipal Autónomo de Fajardo (Municipio de Fajardo o el apelado) el 18 de junio de 2025; (2) ordenó a la Iglesia remover la verja y portón construida en el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real; y, por último (3) le impuso a la apelante el pago de $1,000.00 por concepto de honorarios de abogado.

Inconforme con esta determinación, el 12 de septiembre de 2025, la Iglesia presentó una solicitud de reconsideración.[6] En primer lugar, indicó que el pleito surgió porque el GMAF sostuvo que la Iglesia edificó una verja dentro de sus linderos, afectando el uso y mantenimiento que realizaba en beneficio de los vecinos. Expresó que, el Municipio alegó que le aplicaba la prescripción adquisitiva sobre el terreno en controversia debido al tiempo de uso y mantenimiento, así como por la ausencia de reclamación de la Iglesia durante ese periodo. Ante ello, planteó que el Municipio pretendía validar la incautación del terreno bajo la figura de la usucapión en violación de la protección constitucional que prohibía

---

[6] *Véase*, Entrada Núm. 68, SUMAC TPI.

al Estado apropiarse de propiedad privada sin justa compensación. Invocó la Sección 9, Artículo II de la Constitución de Puerto Rico y la Quinta Enmienda de la Constitución de Estados Unidos, ambas prohibiendo tomar propiedad privada para uso público sin el pago correspondiente.

Argumentó que la usucapión, aunque reconocida en el Código Civil como modo de adquirir dominio, no podía aplicarse contra una persona natural o jurídica cuando se trataba del Estado, pues cualquier adquisición debía realizarse mediante expropiación forzosa y con justa compensación. Señaló que la *Sentencia* del Tribunal reconoció que adquirió la propiedad mediante Escritura de Compraventa Núm. 3, y que el terreno donde el Municipio construyó el área de viraje formaba parte de esa propiedad. Reiteró que el Municipio pretendía incautarse de ese terreno sin compensación y sin cumplir con los requisitos formales de la expropiación.

En cuanto al *injunction*, adujo que el Tribunal erró al resolver el caso mediante un entredicho provisional bajo la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R.46, cuando debió desestimarlo y requerir que el Municipio presentara una acción conforme a la Regla 58 de Procedimiento Civil, 32 LPRA Ap. V, R.58, sobre expropiación forzosa. Argumentó que no se cumplían los criterios para expedir el entredicho provisional, pues el Municipio no tenía derechos sobre la propiedad privada de la Iglesia, no sufrió daño irreparable y contaba con el remedio adecuado en ley: la expropiación forzosa. También indicó que la probabilidad de que el Municipio prevaleciera era nula porque su teoría de usucapión violaba la protección constitucional, y que la causa no se tornaba académica porque el Municipio podía instar expropiación cuando entendiera necesario. Sostuvo que el Municipio no actuó de buena fe ni con diligencia, pues nunca se acercó a la Iglesia para adquirir el terreno mediante el proceso correcto.

En cuanto a la prescripción adquisitiva, argumentó que el Tribunal aplicó erróneamente el derecho, ya que ningún caso citado en la *Sentencia* sostenía que el Estado podía adquirir propiedad privada mediante usucapión sin justa compensación. Expuso que los casos mencionados —*Silva Wiscovich v. Weber Dental Mfg. Co., Administración de Terrenos v. SLG Rivera Morales* y *Vélez Cordero v. Medina*— no eran aplicables porque trataban sobre términos prescriptivos o usucapión entre privados, o bien usucapión contra el Estado, pero nunca a favor del Estado contra un ente privado. Finalmente, recalcó que la Constitución de Estados Unidos tiene supremacía y prohibía la incautación de propiedad privada sin justa compensación, por lo que la Sentencia del Tribunal violentaba ese derecho fundamental.

Por su parte, el 19 de septiembre de 2025, el apelado presentó su oposición a la solicitud de reconsideración.[7] Indicó que presentó la Demanda en el cumplimiento de su deber ministerial y con el propósito de reivindicar el área de viraje de la Calle 4 de la Urbanización Valle Puerto Real. Sostuvo que contrario a lo alegado por la Iglesia en su solicitud de reconsideración, siempre había sostenido que las calles de la Urbanización Valle Puerto Real y de la Extensión Valle Puerto Real le pertenecían por virtud de ley y porque fueron entregadas por los desarrolladores entre los años 1978 y 1982. Expuso que, desde entonces, durante cuarenta y tres (43) años, las calles habían sido de uso público y el Municipio había sido responsable de su mantenimiento, incluyendo aceras, cunetas y manejo de aguas pluviales.

Manifestó que, con el fin de demostrar su titularidad y el carácter público de las calles, presentó y el Tribunal admitió como evidencia tres resoluciones de la ARPE emitidas entre 1978 y 1982,

---

[7] *Véase*, Entrada Núm. 73, SUMAC TPI.

las cuales establecían que todas las calles de ambos proyectos residenciales eran públicas y que fueron aceptadas oficialmente por el Municipio. Destacó que estas resoluciones fueron incorporadas correctamente en las determinaciones de hecho y que evidenciaban la entrega efectiva de las calles al Municipio. Además, sostuvo que presentó prueba documental y testifical sobre su posesión pública, pacífica e ininterrumpida en concepto de dueño por cuarenta y tres (43) años como argumento alterno. Señaló también que el Código Municipal, la derogada Ley de Municipios Autónomos, el Código Civil de 1930, el Código Civil de 2020 y la Ley del Registro de la Propiedad reconocían la prescripción adquisitiva como un medio legal para adquirir propiedad.

Por otro lado, argumentó que la Iglesia aplicó erróneamente la Sección 9 del Artículo II de la Constitución de Puerto Rico, ya que la evidencia demostraba que el área de viraje existente al final de la Calle 4 formaba parte de las calles entregadas al Municipio por los desarrolladores décadas antes de que la Iglesia adquiriera su propiedad en 2005. Sostuvo que el área de viraje, ya asfaltada y con infraestructura municipal, existía incluso antes de que la representante de la Iglesia adquiriera su residencia en la urbanización. Por ello, planteó el Tribunal concluyó correctamente que el GMAF nunca incautó ni afectó propiedad privada protegida por la Constitución. Incluso señaló que, en el año 2006, la Iglesia presentó un caso de reivindicación contra una vecina, pero nunca reclamó el área de viraje al Municipio.

En cuanto a los argumentos sobre prescripción adquisitiva, explicó que la Iglesia interpretó erróneamente los casos citados por el Tribunal. Aclaró que las decisiones de *Silva Wiscovich v. Weber Dental Mfg. Co., Administración de Terrenos v. SLG Rivera Morales y Vélez Cordero v. Medina* fueron citadas únicamente para establecer los principios doctrinales sobre la prescripción adquisitiva: que esta

es un modo de adquirir dominio según las condiciones legales, que la propiedad se consolida automáticamente al cumplirse el término requerido y que la posesión en concepto de dueño tenía un significado específico. Insistió que la jurisprudencia citada permanecía vigente y era aplicable a la determinación de los requisitos de usucapión. Además, reiteró que, aunque en este caso las calles fueron entregadas formalmente por los desarrolladores, los municipios también tenían facultad para adquirir por prescripción adquisitiva conforme a las leyes y códigos aplicables.

Finalmente, solicitó que el Tribunal adoptara los argumentos expuestos en su escrito y declarara No Ha Lugar la solicitud de reconsideración presentada por la Iglesia. Atendidos los escritos, el 24 de septiembre de 2025, el TPI dictó y notificó una *Orden* declarando No Ha Lugar la solicitud de reconsideración.[8] Aún en desacuerdo, el 24 de octubre de 2025, la apelante presentó el recurso de epígrafe y formuló el siguiente señalamiento de error:

> **ERRÓ EL TRIBUNAL AL ABUSAR DE SU DISCRESION MEDIANTE PASION, PERJUICIO Y PARCIALIDAD AL APLICAR UNA FIGURA DE DERECHO QUE NO COBIJA AL MUNICIPIO COMO ENTE ESTATAL ANTE UN CIUDADANO Y EN CONTRA DE LA PROTECCION CONSTITUCIONAL QUE TIENEN ESTOS FRENTE AL GOBERNANTE.**

Atendido el recurso, el 7 de octubre de 2025, emitimos una *Resolución* concediéndole a la apelada hasta el 10 de noviembre de 2025 para presentar su oposición al recurso. Oportunamente, el Municipio de Fajardo presentó su *Alegato del Gobierno Municipal Autónomo* […] y negó que el TPI cometiera los errores que la Iglesia le imputó.

Por otro lado, cabe precisar que, la apelante solicitó presentar una copia de la transcripción de la prueba oral de las vistas celebradas. Dicha solicitud le fue concedida, sin embargo, el 4 de

---

[8] *Véase,* Entrada Núm. 75, SUMAC TPI.

diciembre de 2025, la Iglesia presentó una moción en la cual renuncio a la presentación de la transcripción de la prueba oral.

II.

**-A-**

El Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421, define el *injunction* como "un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". Específicamente, el *injunction* es un remedio extraordinario que "se caracteriza por su perentoriedad dirigida a evitar la producción de un daño inminente o a restablecer el régimen de ley quebrantado por una conducta opresiva, ilegal o violenta" y su eficacia descansa en su naturaleza sumaria y en su pronta ejecución. *Plaza las Américas v. N&H*, 166 DPR 631, 643 (2005).

Ahora bien, la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, reconoce tres modalidades de *injunction,* a saber: (1) el provisional, (2) el preliminar y (3) el permanente. Particularmente, la Regla 57.3 de Procedimiento Civil, *supra,* dispone que al considerar la procedencia de un *injunction* preliminar el tribunal deberá evaluar: (a) la naturaleza de los daños que pueden ocasionarse a las partes de concederse o denegarse; (b) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (d) la probabilidad de que la causa se torne académica de no concederse el *injunction*; (e) el impacto sobre el interés público del remedio que se solicita; y (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. Véase además *Next Step Medical v. Bromedicon, et al.*, 190 DPR 474, 487 (2014).

De otra parte, los factores que deben tomarse en consideración para emitir un *injunction* permanente son: (a) si el demandante ha prevalecido en un juicio en sus méritos; (b) si el demandante posee algún remedio adecuado en ley; (c) el interés público involucrado; y (d) el balance de equidades. *Plaza las Américas v. N&H*, supra, pág. 644.

El elemento principal que gobierna la expedición del *injunction* es la existencia de una amenaza real de sufrir algún menoscabo para el cual no existe un remedio adecuado en ley. *Next Step Medical Co. V. Bromedicon, Inc.,* supra, pág.486. De modo que, le corresponderá a la parte promovente demostrar que, de no concederse el remedio solicitado, sufrirá un daño irreparable. *VDE Corporation v. F & R Contractors,* 180 DPR 21, 40 (2010). Constituye un daño irreparable aquel que no puede ser satisfecho adecuadamente mediante la utilización de los remedios legales disponibles. Íd.

Los criterios y requisitos que deben ser evaluados por el tribunal al considerar una solicitud de *injunction* no son absolutos, sino que su evaluación descansa en la sana discreción del tribunal. *Plaza las Américas v. N&H, supra,* pág. 644. Esta discreción judicial "se ejercerá ponderando las necesidades y los intereses de todas las partes involucradas en la controversia". *Mun. De Ponce v. Gobernador,* 136 DPR 776, 790-791 (1994).

**-B-**

El Art. 741 del Código Civil de 2020, 31 LPRA sec. 7951, establece que la propiedad es el derecho mediante el cual una cosa pertenece de manera exclusiva a una persona, quien puede usarla y disponer de ella sujeto únicamente a los límites impuestos por ley. Igualmente, reconoce que el propietario tiene la facultad de reclamar la cosa de quien la posea o detente sin derecho, a través de la llamada acción reivindicatoria. Íd.

La acción reivindicatoria opera de forma subsidiaria cuando los linderos de predios colindantes ya han sido debidamente demarcados, o cuando, como resultado de dicha demarcación, surge la necesidad de recuperar terrenos que se consideran usurpados. *Arce v. Díaz*, 77 DPR 624, 628 (1954). En estas circunstancias, la acción correcta para dilucidar una posible usurpación de terrenos previamente delimitados es la reivindicatoria. Íd. En este tipo de acciones, corresponde a los demandantes prevalecer mediante la solidez de sus propios títulos, sin que puedan fundamentarse en la insuficiencia o debilidad del título de la parte demandada. *Castrillo v. Maldonado*, 95 DPR 885, 891-892 (1968).

Para que un Tribunal pueda acoger una acción reivindicatoria, deben concurrir los siguientes requisitos: (1) la acción debe ser presentada por quien ostente un derecho de propiedad sobre la cosa; (2) debe dirigirse contra la persona que posee o tiene la cosa en su poder; (3) el demandado no debe tener un derecho que justifique la retención del bien frente al propietario; y (4) la cosa reclamada debe estar debidamente identificada. *Girod Lube v. Ortiz Rolón*, 94 DPR 406, 413 (1967). La jurisprudencia ha reiterado que la acción reivindicatoria respecto a bienes inmuebles solo prosperará cuando se demuestre la concurrencia de todos estos elementos. *Soc. Gananciales v. G. Padín Co., Inc.*, 117 DPR 94 (1986).

**-C-**

La Ley Núm. 107 de 13 de agosto de 2020, según enmendada, conocida como el *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.*, derogó la antigua Ley de Municipios Autónomos. Su propósito principal es integrar, organizar y actualizar las normas relacionadas con la organización, administración y funcionamiento de los municipios. No obstante, las disposiciones sobre la clasificación de los bienes municipales y las formas de adquirir

propiedad, previamente incluidas en la derogada Ley de Municipios Autónomos, permanecieron inalteradas.

En cuanto a los bienes municipales el Art. 2.016 del Código Municipal de Puerto Rico, 21 LPRA sec. 7181, establece que el patrimonio municipal está compuesto por el conjunto de bienes, derechos y acciones que les pertenecen a los municipios. Dichos bienes se clasifican como de dominio público o patrimoniales. Íd. Son bienes de dominio público aquellos destinados a un uso o servicio público—como plazas, calles, avenidas, paseos y obras públicas sufragadas con fondos públicos. Íd. A su vez, estos bienes de dominio público son inalienables, inembargables y no están sujetos a contribución alguna. Íd.

El Código Municipal también dispone sobre los medios por los cuales los municipios pueden adquirir propiedad. El Art. 1.008 del referido estatuto, 21 LPRA sec. 7013, señala que los municipios tienen los poderes naturales y facultades inherentes necesarias para ejercer sus funciones. Entre ellos se encuentra la facultad de "adquirir propiedad por cualquier medio legal, dentro y fuera de sus límites territoriales, incluyendo los procedimientos para el cobro de contribuciones". Íd. Esta potestad es reiterada expresamente en el Art. 2.017 del Código Municipal, 21 LPRA sec. 7182, el cual establece que los municipios podrán adquirir, por cualquier medio legal—incluyendo la expropiación forzosa—los bienes, derechos o acciones que sean necesarios, útiles o convenientes para su operación y funcionamiento o para el adecuado ejercicio de sus funciones.

En lo relativo a la clasificación general de los bienes, el Art. 236 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 6011, define bienes como "las cosas o derechos que pueden ser

apropiables y susceptibles de valoración económica".[9] Seguido, el Art. 237 del Código Civil de 2020, 31 LPRA sec. 6012, clasifica los bienes como públicos y privados; corporales e incorporales; consumibles y no consumibles; fungibles y no fungibles; divisibles e indivisibles; en el tráfico jurídico y fuera del tráfico jurídico; y muebles e inmuebles. En cuanto a los bienes públicos, el Art. 238 del Código Civil de 2020, 31 LPRA sec. 6021, dispone que son aquellos bienes privados pertenecientes al Estado, sus subdivisiones o particulares, que han sido afectados para destinarlos a un uso o servicio público, y que se denominan bienes de uso y dominio público.

Respecto a los modos de adquirir la propiedad, el Art. 745 del Código Civil de 2020, 31 LPRA sec. 7961, dispone que la propiedad se adquiere "por medio de la ley, por la ocupación, el hallazgo, accesión, especificación, la usucapión, la sucesión testada o intestada o por consecuencia de ciertos contratos mediante la tradición".

### III.

En su único señalamiento de error, la Iglesia argumentó que el TPI erró al abusar de su discreción mediante pasión, perjuicio y parcialidad al aplicar una figura de derecho que no cobija al municipio como ente estatal ante un ciudadano y en contra de la protección constitucional que tienen estos frente al gobernante.

Al examinar el expediente en su totalidad y las determinaciones de hecho emitidas por el TPI —todas aceptadas por la Iglesia[10]— concluimos que la *Sentencia* apelada debe ser

---

[9] A pesar de que el Código Civil de Puerto Rico de 2020 derogó el Código Civil de 1930, los conceptos aquí discutidos —particularmente aquellos relacionados con la clasificación de bienes, los modos de adquirir la propiedad y la doctrina de la prescripción adquisitiva— permanecieron esencialmente inalterados en el nuevo ordenamiento.

[10] En la *Moción en Cumplimiento de Orden o Resolución sobre Transcripciones de Vistas Orales* que presentó la Iglesia el 3 de diciembre de 2025, esta última dispuso lo siguiente en el inciso (9) de su escrito: "Mantenemos nuestra posición, que, **aun aceptadas las determinaciones de hechos del juez en la sentencia,**

confirmada, aunque por fundamentos jurídicos distintos. En el caso de marras, el TPI sostuvo que el GMAF adquirió la titularidad del área de viraje de la Calle 4 mediante la figura de la prescripción adquisitiva. Sin embargo, la prueba documental que obra del expediente demuestra claramente que no se trataba de una propiedad privada susceptible de ser usucapida. Por el contrario, las Resoluciones de ARPE de los años 1978 y 1982 validan que, desde la aprobación del proyecto residencial y la aceptación formal por parte del GMAF, la totalidad de las calles de la Urbanización Valle Puerto Real—incluyendo el área de viraje aquí en controversia— fueron entregadas al Municipio como bienes de dominio público. De esta manera, la controversia ante nuestra consideración no gira en torno a la adquisición de dominio por prescripción, sino sobre la obligación del Municipio de proteger y salvaguardar la integridad de un bien público frente a una ocupación privada ilegal.

El TPI formuló determinaciones de hechos que acreditan la entrega y aceptación municipal de la totalidad de las calles del proyecto. Entre ellas, consta que en el año 1978 ARPE determinó que todas las calles de la Urbanización Valle Puerto Real eran de carácter público, y que en el año 1982 certificó que el Municipio aceptó formalmente la entrega de las calles de la Extensión Valle Puerto Real. Ambas resoluciones administrativas establecen de forma expresa que las vías públicas del proyecto residencial fueron afectadas al uso público y sometidas a la titularidad municipal. Del expediente también surge que, desde esa fecha, el GMAF ha mantenido por décadas el asfaltado, las aceras y las cunetas del área de viraje de la Calle 4. Estas determinaciones—particularmente las números 1, 2, 3 y 5—demuestran que el área de viraje nunca formó parte de la Finca Núm. 12,684 adquirida por la Iglesia en el año

---

el tribunal abusó de su discreción al aplicar la prescripción adquisitiva sin compensación a favor del estado contra el ciudadano". (Énfasis nuestro)

2005, sino que constituía infraestructura pública existente desde la década de 1970, incluso antes de que la representante de la Iglesia residiera en la urbanización, hecho consignado en la determinación de hecho número 11.

A la luz del Art. 2.016 del Código Municipal, *supra*, y del Art. 238 del Código Civil de 2020, *supra*, los bienes destinados al uso y servicio público son de dominio público, inalienables, imprescriptibles e inembargables. Una vez destinados al uso público, quedan colocados fuera del tráfico jurídico privado. Así pues, la entrega y aceptación formal de las calles mediante las resoluciones de ARPE de 1978 y 1982 constituyó el modo legal mediante el cual el Municipio adquirió la titularidad del bien. El TPI, pues, no tenía que recurrir a la usucapión para sostener la titularidad municipal, puesto que el Municipio ya era titular desde la destinación inicial y aceptación administrativa formal.

A su vez, la prueba documental demuestra que la Iglesia construyó en agosto del año 2024 una verja y un portón sobre un bien de dominio público, afectando el libre acceso de los residentes, obstruyendo tránsito y servicios esenciales, e interfiriendo con infraestructura municipal. Tales hechos están recogidos en las determinaciones de hecho números 4, 8, 9 y 10. Como principio medular del derecho público, ningún particular puede adquirir un bien de dominio público mediante accesión, prescripción, usucapión o cualquier otro medio incompatible con su naturaleza jurídica. Una ocupación privada de un bien público es improcedente y no genera derechos adquiridos ni expectativa de compensación. La alegación de la Iglesia de que el Municipio debía expropiar el área para remover la verja descansa, por ende, en una premisa errada ya que resulta jurídicamente imposible expropiar lo que ya pertenece al Estado. La estructura levantada por la Iglesia constituyó, por tanto, una ocupación ilegal de un bien público municipal, y su remoción no

implica confiscación alguna, sino la restitución del dominio público función original.

A partir de esta conclusión sobre la titularidad municipal, examinamos la corrección del *injunction* permanente decretado por el TPI. El expediente evidencia que el GMAF demostró la utilización real e inmediata del uso público de la Calle 4, la obstrucción de servicios esenciales, la alteración del tránsito comunitario y la ausencia de un remedio adecuado en ley para atender esa situación fuera del interdicto. Por su propia naturaleza, el daño al dominio público constituye daño irreparable. La protección del uso común de las vías públicas representa un interés público de mayor jerarquía, y cuando un particular ocupa ilegalmente un bien público, procede enérgicamente el remedio interdictal. Bajo los criterios establecidos en la Regla 57 de Procedimiento Civil, *supra* y en la jurisprudencia aplicable, el *injunction* preliminar y permanente emitido por el TPI fue plenamente justificado. Celebrado el juicio en los méritos y prevaleciendo el Municipio, la orden de remover la verja constituía la consecuencia legal necesaria para restituir el bien público a su función natural.

En consecuencia, concluimos que la *Sentencia* apelada debe ser confirmada en su resultado, pero modificada en cuanto a su fundamento jurídico. La Calle 4 y su área de viraje fueron afectadas al uso público y entregadas al Municipio entre 1978 y 1982, convirtiéndose desde entonces en bienes de dominio público municipal. La prescripción adquisitiva no es aplicable a los hechos del caso ni constituye el modo de adquisición pertinente. La construcción de la verja por la Iglesia constituyó una ocupación ilegal de un bien público, y la orden del TPI de removerla respondió adecuadamente a la necesidad de proteger el interés público y restablecer la legalidad. Por ello, confirmamos la *Sentencia* del TPI

en su totalidad, aunque por fundamentos distintos a los expuestos por ese foro.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen apelado, sin embargo, por fundamentos distintos. Además, levantamos la paralización decretada por este Tribunal para que continúen los procedimientos ante el TPI.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones